COURT OF APPEALS
DECISION
DATED AND FILED

August 5, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2021AP499**

**STATE OF WISCONSIN**

Cir. Ct. No. 2020ME17

**IN COURT OF APPEALS
DISTRICT IV**

IN THE MATTER OF THE MENTAL COMMITMENT OF T. A. L:

JACKSON COUNTY,

 PETITIONER-RESPONDENT,

 V.

T. A. L.,

 RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Jackson County: ANNA L. BECKER, Judge. *Affirmed.*

¶1    NASHOLD, J.[1]  T.A.L. was committed to the care and custody of Jackson County under WIS. STAT. ch. 51.  He was originally ordered to outpatient treatment but was transferred to an inpatient facility after he stabbed himself.  T.A.L. appeals from a circuit court order determining that the transfer complied with the requirements of WIS. STAT. § 51.35, the statute governing transfers of ch. 51 patients between treatment settings.  I affirm.

## BACKGROUND

¶2    On July 26, 2020, T.A.L. was emergently detained after he expressed suicidal thoughts and drove his vehicle into a tree in an apparent suicide attempt.  On August 7, following a final hearing, the circuit court committed T.A.L. to six months' outpatient treatment.  The court imposed a set of treatment conditions, with which T.A.L. agreed to comply.  Two conditions were that T.A.L. would "[r]efrain from any acts, attempts, or threats to harm [him]self or others" and "[r]efrain from consuming alcoholic beverages."

¶3    Twelve days later, the County filed a notice for T.A.L.'s transfer to a more restrictive placement (locked inpatient treatment), pursuant to WIS. STAT. § 51.35(1)(e).  The notice discusses two incidents warranting transfer.  First, on August 9, T.A.L. told his ex-girlfriend that he was going to kill himself.  Law enforcement responded for a welfare check and saw that T.A.L. was intoxicated.  Second, on August 14, T.A.L.'s brother told law enforcement that T.A.L. "had taken some medication."  When law enforcement found T.A.L., he was speeding

_____

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2019-20).  All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

in his vehicle. A high-speed pursuit ensued, after which T.A.L. stabbed himself with a knife about five times, in the throat, thigh, and arm.

¶4 In addition to describing the grounds for transfer, T.A.L.'s notice sets forth various statutory rights under WIS. STAT. § 51.35(1)(e), pertaining to transfers to a more restrictive treatment setting. The County now acknowledges that the "one-size-fits-all" notice used to transfer T.A.L. is confusing, in that it lists rights that might not apply to each transferee. As discussed in more detail below, broadly speaking, a county may transfer a person under ch. 51 commitment either on "reasonable medical and clinical judgment" grounds or because there was "an alleged violation of a condition of a transfer to less restrictive treatment."[2] *See* WIS. STAT. § 51.35(1)(a); (e)1., 2. (For ease of reading, I sometimes refer to the former as a "medical need" transfer and the latter as a "treatment condition violation" transfer.) There are additional procedural requirements for treatment condition violation transfers, including that the county must hold an administrative hearing on the transfer within ten days. T.A.L.'s notice lists rights pertaining to both types of transfer, but without specifying which rights apply to T.A.L.

¶5 On August 17, T.A.L. was transferred from the hospital's medical unit to its inpatient psychiatric unit. On August 19, Jared Gorsuch, M.D., a psychiatric unit doctor, evaluated T.A.L. The same day, the County filed the above-described notice of transfer to more restrictive placement, pursuant to WIS.

---

[2] Either the Department of Health Services or a county department has custody over those under WIS. STAT. ch. 51 commitment. *See* WIS. STAT. § 51.20(13)(a); *see also* WIS. STAT. § 51.35(1)(a). In this opinion, I refer generally to the entity committing or transferring the patient as "the county."

STAT. § 51.35(1)(e). On August 28, the hospital discharged T.A.L. to a long-term inpatient psychiatric facility (that transfer is not at issue here).

¶6 T.A.L. was appointed counsel on September 2 and filed a request with the circuit court for placement in less restrictive care. In his request, T.A.L. assumed, "[b]ased on the paperwork filed," that he was transferred solely because he violated his treatment conditions. He argued that because he did not receive an administrative hearing within ten days, "he should be ordered released back to outpatient treatment." In response, the County argued that T.A.L. was *not* transferred because of a treatment condition violation, but for medical need—specifically, because of "his impulsive and self-harming behaviors, which include[] stabbing himself in the throat."

¶7 At the September 9 hearing on T.A.L.'s request, the circuit court heard arguments from T.A.L. and the County. The court characterized T.A.L.'s as "a bit of a hybrid case" in that there were two potential statutory bases for transfer: T.A.L. evidenced a medical need for inpatient care but also violated a treatment condition by harming himself. The court, however, ultimately found that T.A.L.'s transfer was due to medical need. The court further determined that the County had complied with all the requirements for a medical need transfer, which do not include the right to an administrative hearing within ten days.

¶8 Pursuant to WIS. STAT. § 51.35(1)(e)1., T.A.L. requested a review hearing, held on September 25, on the medical need for the transfer.[3] At that

---

[3] Under WIS. STAT. § 51.35(1)(e)1., a person transferred for medical need has "the right to petition a court in the county in which the patient is located or the committing court for a review of transfer."

hearing, Dr. Gorsuch, T.A.L.'s hospital inpatient psychiatrist, testified regarding the need for the transfer. Gorsuch explained that he evaluated T.A.L. on August 19 after T.A.L. was medically stabilized and transferred to the psychiatric unit. Gorsuch treated and observed T.A.L. until T.A.L.'s discharge on August 28.

¶9 Gorsuch testified that T.A.L. "was not doing well when I first saw him" and "was very, very irritable and emotionally labile." By August 28, T.A.L. had "improved compared to when [Gorsuch] first saw him," but not to the point where he could be released to outpatient care (and accordingly, T.A.L. was discharged to a long-term inpatient facility on August 28). Gorsuch testified that, as of August 28, locked inpatient care was the least restrictive treatment setting for T.A.L. because of "the severity of the suicide attempt and the fact that this was the third time he's had similar [suicide] attempts in … less than a year." Thus, Gorsuch "felt that [T.A.L.] needed a little bit longer observation to ensure that he stabilizes optimally for a period of time before trialing him back into the community."

¶10 Based on this testimony, the circuit court determined that the transfer to inpatient treatment was justified, based on "reasonable medical and clinical judgment." *See* WIS. STAT. § 51.35(1)(a). The court entered an order finding that the transfer complied with the statutory requirements of § 51.35. This appeal follows.

## DISCUSSION

### *Although T.A.L.'s Appeal Is Moot, Review of the Merits Is Warranted*

¶11     T.A.L.'s commitment order was entered on August 7, 2020, and expired six months later, before he filed his notice of appeal.[4]   The County therefore argues that T.A.L.'s appeal should be dismissed as moot.   T.A.L. concedes that this case is moot, but he argues that one or more applicable exceptions to the mootness doctrine justifies appellate review.

¶12     Mootness is a doctrine of judicial restraint, under which a court may decline to review an issue where its decision would have no practical effect on a live controversy.  *Marathon Cnty. v. D.K.*, 2020 WI 8, ¶19, 390 Wis. 2d 50, 937 N.W.2d 901.   Even where an issue is moot, the court may reach its merits by applying a recognized mootness exception.  *Id.*   This court may decide an otherwise moot issue if the issue:

> (1) is of great public importance; (2) occurs so frequently that a definitive decision is necessary to guide circuit courts; (3) is likely to arise again and a decision of the court would alleviate uncertainty; or (4) will likely be repeated, but evades appellate review because the appellate review process cannot be completed or even undertaken in time to have a practical effect on the parties.

*Outagamie Cnty. v. Melanie L.*, 2013 WI 67, ¶80, 349 Wis. 2d 148, 833 N.W.2d 607 (quoted source omitted).

---

[4] T.A.L. was recommitted to outpatient treatment for twelve months on February 2, 2021, also prior to the March 15, 2021 notice of appeal filed in this case.  The recommitment is not a subject of this appeal.

6

¶13    As our supreme court has recognized, issues in WIS. STAT. ch. 51 cases are "likely to evade appellate review in many instances because the order appealed from will have expired before an appeal is completed." *Id.* In addition, the issue addressed in this case—the application of WIS. STAT. § 51.35(1)(e) where the patient demonstrates a potential medical need for transfer and violates a treatment condition—is a question that "is likely to arise again," and for which appellate review may provide clarity and "alleviate uncertainty." *See id.* I will therefore apply a mootness exception to reach the merits of T.A.L.'s appeal.

### T.A.L.'s Transfer Comported With the Requirements of WIS. STAT. § 51.35

Principles of law and standard of review

¶14    WISCONSIN STAT. § 51.35 sets forth the procedure for transferring a person committed under ch. 51. Under § 51.35(1)(a), transfers must be "consistent with reasonable medical and clinical judgment." Moreover, any "transfer result[ing] in a greater restriction of personal freedom" must be "in accordance with" paragraph (1)(e). Sec. 51.35(1)(a). This opinion refers to a transfer under paragraph (1)(e) as a "more restrictive" transfer. There are two types of more restrictive transfers, with different rights and procedures applicable to each. ***Manitowoc Cnty. v. Samuel J.H.***, 2013 WI 68, ¶24, 349 Wis. 2d 202, 833, N.W.2d 109.

¶15    "Subdivision (1)(e)1. provides rights for patients transferred for 'reasonable medical and clinical judgment.'"[5] ***Samuel J.H.***, 349 Wis. 2d 202, ¶24

---

[5] WISCONSIN STAT. § 51.35(1)(e)1. applies "[w]henever any transfer between different treatment facilities results in a greater restriction of personal freedom for the patient and whenever the patient is transferred from outpatient to inpatient status."

(footnote omitted) (quoting WIS. STAT. § 51.35(1)(a)). Specifically, a patient transferred for medical reasons must be informed, both orally and in writing, of his or her rights to: contact an attorney and an immediate family member, have counsel provided at public expense, and petition for judicial review of the transfer. Sec. 51.35(1)(e)1.; *Samuel J.H.*, 349 Wis. 2d 202, ¶24 n.4.

¶16    "Subdivision (1)(e)2. provides rights '[i]n addition to the rights and requirements specified in subd. 1.,' when a more restrictive transfer lasts 'for a period of more than 5 days' and is 'due to an alleged violation of a condition of a transfer to less restrictive treatment.'"    *Samuel J.H.*, 349 Wis. 2d 202, ¶24 (footnote omitted) (quoting WIS. STAT. § 51.35(1)(e)2.). The county must provide "a written statement of the reasons for the transfer and the facts supporting the transfer." Sec. 51.35(1)(e)2. The county must also provide "oral and written notice" of three general categories of information. *Id.* First, the patient has a right to counsel at public expense (this reiterates the requirement of subdivision (1)(e)1.). Sec. 51.35(1)(e)2.b., c. Second, the patient's counsel has

> [t]he right[] … to investigate the facts specified in the written statement of reasons for the transfer, to consult with the patient prior to the patient's waiving a hearing [to which the patient is entitled under § 51.35(1)(e)3.], to represent the patient at all proceedings on issues relating to the transfer, and to take any legal steps necessary to challenge the transfer.

Sec. 51.35(1)(e)2.d. Third, "[t]he requirements and rights under" subdivisions (1)(e)3.-5. apply. As pertinent here, subdivisions (1)(e)3. and 4. guarantee the right to an administrative hearing on the transfer within ten days, at which the county must show, by a preponderance of the evidence, that the patient violated a treatment condition.

¶17    "The interpretation and application of [WIS. STAT.] § 51.35 present questions of law that we review de novo." *Samuel J.H.*, 349 Wis. 2d 202, ¶18. We review under the "clearly erroneous" standard the circuit court's factual finding on the reason for a transfer. *See id.*, ¶¶18, 33.

Application to T.A.L.'s appeal

¶18    TA.L. does not dispute that his transfer to inpatient psychiatric care complied with WIS. STAT. § 51.35(1)(e)1., governing transfers for "reasonable medical and clinical judgment." *See* § 51.35(1)(a); *Samuel J.H.*, 349 Wis. 2d 202, ¶24. His position, however, is that his transfer was *not* based on reasonable medical and clinical judgment but on a violation of his treatment conditions to "[r]efrain from any acts, attempts, or threats to harm [him]self or others" and "[r]efrain from consuming alcoholic beverages." Accordingly, he argues that he was entitled to, but did not receive, the additional statutory protections of § 51.35(1)(e)2.-5., applicable to treatment condition violation transfers.

¶19    The circuit court twice found that T.A.L.'s August 17 transfer to inpatient treatment was based on reasonable medical and clinical judgment: first at the September 9 hearing on T.A.L.'s request for transfer to less restrictive care, and then again at the September 25 review hearing. Based on the evidence and all reasonable inferences therefrom, I cannot conclude that this finding was clearly erroneous. *See Bautista v. State*, 53 Wis. 2d 218, 223, 191 N.W.2d 725 (1971) (we adopt reasonable inferences from the evidence supporting a trier of fact's findings). Gorsuch testified that T.A.L. harmed himself seriously enough to warrant surgery. Gorsuch, moreover, characterized T.A.L.'s actions as a suicide attempt. Gorsuch believed that T.A.L. could not be safely treated in an outpatient setting, given "the severity of the suicide attempt and the fact that this was the

9

third time he's had similar [suicide] attempts in … less than a year." This testimony supports the circuit court's conclusion that T.A.L. was transferred to inpatient treatment based on medical need.

¶20    T.A.L.'s arguments to the contrary are not persuasive. First, he argues that, "if the basis for the transfer is a reasonable medical and clinical need, that need must be identified before the transfer." Otherwise, a county "could simply say retrospectively … that the basis for the transfer was a medical need."

¶21    The County's notice discusses the facts supporting T.A.L.'s transfer (such as the high-speed chase and his stabbing himself), but it does not identify whether the statutory basis for transfer is medical need or a treatment condition violation. In T.AL.'s view, this renders his notice deficient. But T.A.L. does not point to, and I cannot identify, any actual notice requirement that the County ignored here. Moreover, I disagree that, under the current statutory scheme, a county may "simply say retrospectively" that the transfer was based on medical need. If and when a hearing occurs, the county must "prove that the transfer was based on reasonable medical and clinical judgment." *Samuel J.H.*, 349 Wis. 2d 202, ¶26.

¶22    Furthermore, T.A.L.'s assertion that the County gave a "post-hoc assertion that the ground for the transfer was a medical need" is not borne out by the record. The County gave T.A.L. a notice that lists rights pertaining not only to transfers based on medical need but also to transfers based on a treatment condition violation, including the right to an administrative hearing within ten days. This prompted T.A.L. to petition for a change of placement under WIS. STAT. § 51.35(1)(e)2.-5., on the assumption that he was a treatment condition violation transferee. On receiving T.A.L.'s request, however, the County

asserted—and has maintained thereafter—that T.A.L. was in fact transferred solely for medical and clinical reasons. As the circuit court noted, the use of a "one-size-fits-all" notice was not a good practice (to its credit, the County concedes this point, and it represents that it no longer uses this form). But the County's use of this notice does not in and of itself demonstrate that it concocted a "post-hoc" reason for transfer. And in any case, as previously discussed, the circuit court found this a medical need transfer, and was not clearly erroneous in so finding.

¶23     Along similar lines, T.A.L. argues that the simple fact that his notice of transfer contains a list of rights under WIS. STAT. § 51.35(1)(e)2.-5. "shows the [C]ounty was proceeding under the treatment condition violation grounds for the transfer." If T.A.L. means to argue that the County, by providing this notice, was estopped from later arguing medical need, he provides no legal basis for this assertion. Again, the use of this notice does not change the factual basis for T.A.L.'s transfer, which the circuit court found was medical need.

¶24     Finally, T.A.L. points to the commitment order itself as prohibiting a more restrictive medical need transfer. This order commits T.A.L. to outpatient treatment with conditions, specifying that "[a] violation of any condition may result in the subject being taken into custody by law enforcement for inpatient treatment." T.A.L. appears to argue that the only available mechanism for transferring him to inpatient treatment under this order was for the County to claim, and prove, that he violated a treatment condition. This argument was not raised below, was only alluded to in T.A.L.'s brief-in-chief, and is undeveloped and unsupported by legal authority—thus providing several grounds for not addressing it. *See State v. Huebner*, 2000 WI 59, ¶¶10-12, 235 Wis. 2d 486, 611 N.W.2d 727 (arguments not raised in the circuit court are deemed forfeited); *Tele-*

*Port, Inc. v. Ameritech Mobile Commc'ns, Inc.*, 2001 WI App 261, ¶10 n.2, 248 Wis. 2d 846, 637 N.W.2d 782 (we do not address argument raised for the first time in the reply brief); *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (we do not address arguments that are undeveloped or inadequately briefed). But in the interest of completeness, I note that T.A.L.'s position is at odds with the statutory scheme and WIS. STAT. § 51.35 specifically, which sets forth detailed procedures for medical need transfers without reference to the patient's court-ordered maximum level of care. Thus, our supreme court in *Samuel J.H.* applied § 51.35 in a nearly identical factual scenario, to review the transfer of a person committed outpatient and later transferred inpatient, pursuant to the same order, to treat a medical need. *See Samuel J.H.*, 349 Wis. 2d 202, ¶¶6-7, 14, 33.

¶25 For the reasons stated above, I conclude that the circuit court did not clearly err in determining that T.A.L.'s transfer to inpatient treatment was based on reasonable and medical clinical judgment. Because T.A.L. received the procedural protections under WIS. STAT. § 51.35(1)(e)1. owed to a ch. 51 patient transferred on this basis, I affirm the circuit court order.[6]

---

[6] The parties also dispute whether WIS. STAT. § 51.35(1)(e)2.-5. applies *at all* to T.A.L. and those similarly situated. As stated, for convenience, I have used the term "treatment condition violation" in the above discussion, to differentiate a transfer of this type under § 51.35(1)(e)2.-5. from a medical need transfer under § 51.35(1)(e)1. However, subdivision (1)(e)2. does not refer to a transfer due to a "treatment condition violation"; rather, it applies to a transfer "due to an alleged violation of a condition of a transfer to less restrictive treatment." Sec. 51.35(1)(e)2. In the County's view, this language means that the additional rights of § 51.35(1)(e)2.-5. apply only where a patient is committed inpatient, is then transferred outpatient subject to conditions, and is later transferred back to a more restrictive setting due to a violation of one or more of those conditions. According to the County, because T.A.L. was never committed to inpatient treatment before the transfer, the additional statutory rights do not apply, including the right to an administrative hearing within ten days. In contrast, T.A.L. argues that "a transfer to less restrictive treatment" occurred when he was released from emergency detention to the outpatient setting. I do not decide this issue because I affirm on narrower grounds,

(continued)

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

determining that the circuit court was not clearly erroneous in finding that T.A.L. was transferred for medical need under § 51.35(1)(e)1. *See **Barland v. Eau Claire Cnty.**, 216 Wis. 2d 560, 566 n.2, 575 N.W.2d 691 (1998) ("[W]e typically decide cases on the narrowest possible grounds."); **Barrows v. American Fam. Ins. Co.**, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").