COURT OF APPEALS
DECISION
DATED AND FILED

June 18, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP83**

Cir. Ct. No. **2022CV539**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

DESJURDIN LACEY AND MILDRED LACEY,

PLAINTIFFS-APPELLANTS,

V.

CREDIT ACCEPTANCE COMPANY,

DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Dodge County: MARTIN J. DE VRIES, Judge. *Affirmed*.

Before Graham, P.J., Nashold, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Desjurdin Lacey and Mildred Lacey brought an action against Credit Acceptance Company ("Credit Acceptance") alleging

violations of WIS. STAT. § 427.104(1)(h) and (j) (2023-24)[1] for illegal debt collection practices, and WIS. STAT. §§ 895.446 and 943.20 for civil theft. Credit Acceptance moved for judgment on the pleadings, which the circuit court granted. The Laceys appeal the order, arguing that the court erred. We reject the Laceys' arguments and affirm.

## BACKGROUND

¶2    The following facts are undisputed and are derived from the pleadings.

¶3    The Laceys commenced a voluntary amortization of debts proceeding under WIS. STAT. § 128.21.[2]  One of the debts that the Laceys sought to amortize was $5,384.09 owed to Credit Acceptance.  At the time the amortization proceedings were commenced, Desjurdin Lacey's wages were being garnished to satisfy the Laceys' debt to Credit Acceptance.

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

[2] WISCONSIN STAT. § 128.21(1) provides:

> Any person whose principal source of income consists of wages or salary may file a verified petition with the circuit court in the county of his or her residence stating that the person is unable to meet current debts as they mature, but is able to make regular future payments on account sufficient to amortize the debts over a period of not more than 3 years, and that he or she desires the aid of the court to effectuate the amortization. The petition shall also set forth the names and addresses of any creditors who have levied any executions, attachments or garnishments, and of any garnishees, and the court shall forthwith, by order, require that proceedings for the enforcement of the executions, attachments or garnishments be stayed during the pendency of proceedings under this section….

¶4      The circuit court issued an order in the amortization proceedings that enjoined creditors from garnishing the Laceys' wages to collect the debts the Laceys were seeking to amortize.  The order also enjoined creditors from communicating with the Laceys, except through the Laceys' counsel, for the purpose of "debt collection" as that term is statutorily defined.[3]

¶5      After the order issued on September 14, 2022, a total of $117 was garnished from two of Desjurdin's paychecks on October 7 and 21, 2022, in order to satisfy the debt owed to Credit Acceptance.  Credit Acceptance also sent a letter to the Laceys after the order issued, which was dated September 29, 2022.  At the top of the letter and in bold, the letter states: "**This letter is for informational purposes only and is not a demand for payment.**"  It goes on to state:

> Our records indicate that you authorized Credit Acceptance … to automatically withdraw recurring installment payments from a designated bank account or debit card.
>
> However, our records also indicate that you or your co-buyer recently filed for bankruptcy.[4]  Therefore, we have terminated the automatic withdrawals.
>
> If you did not want us to terminate the automatic withdrawals, you or your co-buyer may voluntarily reactivate the automatic withdrawals through … the following means .…

---

[3] *See* WIS. STAT. § 128.21(2) ("After the filing of a petition under this section and until the dismissal of the proceedings, no execution, attachment or garnishment may be levied or enforced by any creditor seeking the collection of any claim which arose prior to the proceedings, unless such claim is not included by the debtor in the claims to be amortized .…"); *see also* WIS. STAT. § 427.103(2) ("'Debt collection' means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer.").

[4] The letter mistakenly refers to the Laceys having filed for bankruptcy rather than having filed a petition for voluntary amortization of debts under WIS. STAT. § 128.21.

The letter then describes what the Laceys needed to do if they wished to voluntarily reactivate the withdrawals.

¶6    The Laceys brought this action against Credit Acceptance. The Laceys alleged that when Credit Acceptance sent the letter and garnished Desjurdin's wages after the entry of the order, Credit Acceptance engaged in illegal debt collection practices in violation of WIS. STAT. § 427.104(1)(h) and (j), respectively, by threatening or harassing the Laceys, and by attempting to enforce a nonexistent right. The Laceys additionally alleged that by garnishing Desjurdin's wages, Credit Acceptance engaged in civil theft in violation of WIS. STAT. §§ 895.446 and 943.20.

¶7    Credit Acceptance moved to compel arbitration and the circuit court granted that motion, but in an earlier appeal we reversed that order and remanded to the circuit court for further proceedings. *See Lacey v. Credit Acceptance Corp.*, No. 2023AP751, unpublished slip op. (WI App Aug. 15, 2024). On remand, Credit Acceptance moved for judgment on the pleadings. The circuit court granted that motion.

¶8    The Laceys appeal.[5]

---

[5] The Laceys' brief does not comply with WIS. STAT. RULE 809.19(8)(bm), which addresses the pagination of appellate briefs. *See* RULE 809.19(8)(bm) (providing that, when paginating briefs, parties should use "Arabic numerals with sequential numbering starting at '1' on the cover"). As our supreme court explained when it amended the rule, the pagination requirement ensures that the numbers on each page of the brief "will match … the page header applied by the eFiling system, avoiding the confusion of having two different page numbers" on every page of a brief. S. Ct. Order 20-07 cmt. at x1.

**DISCUSSION**

¶9      The Laceys argue that the circuit court erred in granting judgment on the pleadings on the Laceys' claims for illegal debt collection practices under WIS. STAT. § 427.104(1)(h) and (j), and for civil theft under WIS. STAT. §§ 895.446 and 943.20.  "A judgment on the pleadings is essentially a summary judgment decision without affidavits and other supporting documents." ***Southport Commons, LLC v. DOT***, 2021 WI 52, ¶18, 397 Wis. 2d 362, 960 N.W.2d 17.  In determining whether judgment on the pleadings was proper, we first examine whether the complaint has stated a claim.  ***Id.***, ¶42.  "We accept as true all well-pleaded facts in [the] complaint, as well as reasonable inferences from those facts, but we draw our own legal conclusions …." ***Colectivo Coffee Roasters, Inc. v. Society Ins.***, 2022 WI 36, ¶7, 401 Wis. 2d 660, 974 N.W.2d 442.

¶10     If the complaint has stated a claim, "'we next examine the responsive pleading to ascertain whether an issue of material fact exists.'" ***Southport Commons***, 397 Wis. 2d 362, ¶42 (quoting ***McNally v. Capital Cartage, Inc.***, 2018 WI 46, ¶23, 381 Wis. 2d 349, 912 N.W.2d 35).  Judgment on the pleadings is proper only "if there are no genuine issues of material fact," which means that no reasonable jury could return a verdict for the nonmoving party.  ***Id.***, ¶¶18, 43.

¶11     Whether judgment on the pleadings should be granted is a question of law that we review independently.  ***Id.***, ¶18.  Here, our review requires us to interpret and apply various statutes.  "Statutory interpretation and application are likewise questions of law" that we review independently.  ***Id.***, ¶19.

¶12     Before addressing the Laceys' claims, we first generally observe that the Laceys spend a considerable amount of time in their appellants' brief

critiquing some of what the circuit court said in granting Credit Acceptance's motion for judgment on the pleadings.[6]  However, because we review the court's decision on a motion for judgment on the pleadings independently, we need not address these arguments.  In contrast, as we discuss in more detail below, the Laceys give short shrift to discussing the elements of their claims and how they were sufficiently pleaded.  As stated, the complaint alleges illegal debt collection practices under WIS. STAT. § 427.104(1)(h) and (j), as well as civil theft under WIS. STAT. §§ 895.446 and 943.20.  We address each claim in turn.

## I. WISCONSIN STAT. § 427.104(1)(h).

¶13  WISCONSIN STAT. § 427.104(1)(h) states in relevant part: "In attempting to collect an alleged debt … where there is an agreement to defer payment, a debt collector may not: … [e]ngage in … conduct which can reasonably be expected to threaten or harass the customer[.]"

¶14  The Laceys argue that they sufficiently pleaded that Credit Acceptance violated WIS. STAT. § 427.104(1)(h) both by sending the letter and by

---

[6] Specifically, the Laceys argue that the circuit court erred by concluding that Credit Acceptance did not have a duty to stop the garnishment of Desjurdin's wages and by suggesting that the Laceys' counsel should have taken steps to stop the garnishment.  Although the court did reject the Laceys' argument that Credit Acceptance had a duty to stop the garnishment, that did not provide the basis for the court's decision.  The court concluded that the letter was not an attempt to collect a debt and was not threatening or harassing, and also that the letter did not attempt to enforce a nonexistent right.  Specifically, the court stated: "If [the Laceys] voluntarily wanted to pay this debt, there would be nothing stopping them from doing that, and if somebody sends you a letter saying, just in case this is what you want to do, here's how you do it," that is not threatening or harassing or an attempt to enforce a nonexistent right.  The court also concluded that Credit Acceptance was entitled to judgment on the pleadings as to the claims regarding the garnishment because the Laceys did not plead that Credit Acceptance did anything to trigger the garnishments after the commencement of the amortization proceedings.  Finally, regarding the civil theft claim, the court described this claim as "trying to put a square peg in a round hole."  The court explained, "It's not the kind of case where there even can be factual support for embezzlement or theft.  It just doesn't fit here[.]"

garnishing Desjurdin's wages. We conclude that Credit Acceptance is entitled to judgment on the pleadings on the Laceys' claim under § 427.104(1)(h).

*A. The letter.*

¶15 Regarding the Laceys' allegation that Credit Acceptance violated WIS. STAT. § 427.104(1)(h) by sending the letter, we conclude that Credit Acceptance is entitled to judgment on the pleadings because the complaint fails to sufficiently allege that the letter was an "attempt[] to collect an alleged debt," as that provision requires. The letter explicitly states in bold, "**This letter is for informational purposes only and is not a demand for payment.**" The letter goes on to say that Credit Acceptance had terminated its automatic withdrawals, and explains what the Laceys would have to do to "voluntarily reactivate the automatic withdrawals" if they "did not want [Credit Acceptance] to terminate the automatic withdrawals." The letter did not demand or ask for payment, or threaten consequences for a failure to pay. As a matter of law, the letter was not an attempt to collect an alleged debt. *Cf. **Bailey v. Security Nat'l Servicing Corp.***, 154 F.3d 384, 388-89 (7th Cir. 1998) (stating that as a matter of law on summary judgment, under federal Fair Debt Collection Practices Act, a letter was not related to "the collection" of a debt when the letter did not demand payment and merely informed debtors of the status of their account).

¶16 We reject the Laceys' argument to the contrary. The Laceys assert in their appellants' brief, without any citations to legal authority, that "the complaint plausibly alleges [that the letter] was an indirect impermissible collection attempt. At the pleading stage, the [circuit] court was required to accept that inference." However, as Credit Acceptance argues, whether the Laceys adequately pleaded that the letter violates WIS. STAT. § 427.104(1)(h) is a legal

conclusion that we review independently, and not a well-pleaded fact or a reasonable inference from such a fact that we must accept as true. *See **Colectivo Coffee Roasters***, 401 Wis. 2d 660, ¶7; ***Data Key Partners v. Permira Advisers LLC***, 2014 WI 86, ¶18, 356 Wis. 2d 665, 849 N.W.2d 693 ("[L]egal conclusions are insufficient to withstand a motion to dismiss."). Based on our independent review, we conclude for the reason set forth above that the letter was not an attempt to collect a debt. Therefore, Credit Acceptance is entitled to judgment on the pleadings as to the Laceys' claim that Credit Acceptance violated § 427.104(1)(h) by sending the letter.[7]

## B. The garnishment.

¶17 The Laceys also argue that they sufficiently pleaded their claim that Credit Acceptance violated WIS. STAT. § 427.104(1)(h) by garnishing Desjurdin's wages after the order issued that enjoined creditors from garnishing the Laceys' wages in order to collect any of the debts that the Laceys were seeking to amortize. However, in their appellants' brief, the Laceys do not argue that they sufficiently pleaded that the garnishment of Desjurdin's wages violated § 427.104(1)(h) so as to survive a motion for judgment on the pleadings. Any argument relevant to this claim is entirely absent from the Laceys' appellants' brief; the Laceys do not explain what the elements of a claim under § 427.104(1)(h) are or argue that the complaint sufficiently pleaded these

---

[7] Because we conclude that the complaint fails to adequately plead that the letter was an "attempt[] to collect an alleged debt," we need not address Credit Acceptance's additional arguments that the Laceys did not adequately plead that the letter was threatening or harassing under WIS. STAT. § 427.104(1)(h) and that the Laceys did not develop an argument on appeal that they adequately pleaded that the letter was threatening or harassing. *See **Barrows v. American Fam. Ins. Co.***, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) (we need not address every issue when one is dispositive).

8

elements. Instead, they seek to develop this argument for the first time on appeal in their reply brief.

¶18 To be sure, in their reply brief, the Laceys argue that they raised this argument in their appellants' brief. In support, they quote a sentence in their appellants' brief stating that Credit Acceptance "allowed garnishment to continue, knowing it was prohibited, and kept the funds anyway." However, the Laceys made this statement in arguing that they sufficiently pleaded that the garnishment violated WIS. STAT. § 427.104(1)(j), not paragraph (1)(h). Moreover, even if this statement was made regarding § 427.104(1)(h), it is not a developed argument.

¶19 Because the Laceys develop this argument for the first time in their reply brief, we reject it without considering it further. *See Techworks, LLC v. Wille*, 2009 WI App 101, ¶28, 318 Wis. 2d 488, 770 N.W.2d 727.

## II. WISCONSIN STAT. § 427.104(1)(j).

¶20 WISCONSIN STAT. § 427.104(1)(j) states in relevant part: "In attempting to collect an alleged debt … where there is an agreement to defer payment, a debt collector may not: ... [c]laim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist[.]" The Laceys alleged in their complaint that Credit Acceptance violated § 427.104(1)(j) both by sending the letter and by garnishing Desjurdin's wages. We conclude that Credit Acceptance is entitled to judgment on the pleadings on the Laceys' claim under § 427.104(1)(j).

### A. The letter.

¶21 First, the Laceys' argument that they sufficiently pleaded a violation of WIS. STAT. § 427.104(1)(j) fails for the same reason that their claim that the

9

letter violates paragraph (1)(h) does: the letter was not an attempt "to collect an alleged debt" under § 427.104(1). Moreover, we conclude that the letter was not claiming, attempting, or threatening to enforce a nonexistent right under § 427.104(1)(j). As stated, the letter did not attempt to persuade the Laceys to resume the automatic payments, nor did it threaten any consequences if the Laceys did not resume the payments; it merely informed them that the automatic payments had stopped, that they could voluntarily resume the payments if they wished, and what steps they would have to take in order to do so.

### B. The garnishment.

¶22    The Laceys also argue that they sufficiently pleaded their claim that Credit Acceptance violated WIS. STAT. § 427.104(1)(j) by garnishing Desjurdin's wages. Specifically, the Laceys argue that the order in the amortization proceedings "stripped [Credit Acceptance] of any present right to enforce its judgment through wage garnishment. The complaint alleges that [Credit Acceptance] knowingly continued to benefit from that enforcement mechanism, which is all that is required at this stage." We reject these arguments. In doing so, we rely on persuasive federal case law cited by Credit Acceptance, which the Laceys do not adequately refute.

¶23    First, Credit Acceptance relies on *Whitehead v. Discover Bank*, 221 F. Supp. 3d 1055 (E.D. Wis. 2016), as persuasive authority. In *Whitehead*, the debtor's wages were garnished after the creditor commenced two garnishment actions to recover two separate judgments, and while the debtor's answers to the garnishment complaints were pending. *Id.* at 1058-59. The debtor sued the creditor, alleging that the creditor violated WIS. STAT. § 427.104(1)(j) by accepting payments from the garnishee while the debtor's garnishment answers

were pending. *Id.* at 1060. The federal district court concluded, as a matter of law for purposes of summary judgment, that the debtor did not violate § 427.104(1)(j) by accepting the payments from the garnishee. *Id.* at 1064.

¶24 Specifically, the *Whitehead* court stated:

> The earnings garnishment statute does not state that a creditor may not accept garnishment payments that the garnishee wrongfully withheld from the debtor's earnings. Rather, the statute provides that the garnishee is liable to the debtor for actual damages if it "deducts more from the debtor's earnings than is authorized by this subchapter." WIS. STAT. § 812.41(2). No similar provision grants the debtor a claim against the creditor for accepting earnings that the garnishee wrongfully deducted. Nor does the statute instruct the creditor to return wrongfully deducted earnings to the garnishee or to forward them to the debtor.

*Id.* at 1063-64. The court thus reasoned, "The statutory scheme … indicates that if the garnishee wrongfully withholds the debtor's earnings and sends them to the creditor, the creditor may accept the payments, and the debtor's remedy for having his earnings wrongfully garnished lies against the garnishee." *Id.* at 1064. Credit Acceptance argues that, as in *Whitehead*, so too here: a creditor does not violate WIS. STAT. § 427.104(1)(j) by accepting wrongfully garnished funds.

¶25 The Laceys contend that *Whitehead* is inapposite, arguing that in *Whitehead*, the debtor's wages were garnished before the debtor eventually commenced amortization proceedings, and that the garnishment stopped once those proceedings had commenced. Although this is true, *id.* at 1059, it does nothing to undermine the conclusion from *Whitehead* on which Credit Acceptance relies: that when a debtor's wages are wrongfully garnished, the debtor's remedy is against the garnishee and the creditor may accept the payments from the garnishee. The Laceys do not, for example, argue that the *Whitehead* court's analysis of the earnings garnishment statute is flawed. In the absence of an

argument that adequately refutes the reasoning or relevant conclusion in *Whitehead*, we deem it persuasive. *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 ("[W]e will not abandon our neutrality to develop arguments.").

¶26 Additionally, Credit Acceptance relies on *Braatz v. Check & Cash LLC*, 610 B.R. 887 (Bankr. E.D. Wis. 2019), as persuasive authority. *Braatz* addressed whether a creditor's receipt of money from a garnishee violated WIS. STAT. § 427.104(1)(j) when the garnished funds were collected in violation of an automatic stay in federal bankruptcy proceedings. *Id.* at 889. The *Braatz* court concluded that even though the receipt of the money violated the stay in the bankruptcy proceedings, it was not an assertion of a nonexistent right in violation of § 427.104(1)(j).[8] *Id.* at 893. The *Braatz* court reasoned, based on its interpretation of *Security Finance v. Kirsch*, 2019 WI 42, 386 Wis. 2d 388, 926 N.W.2d 167, that the automatic stay in the bankruptcy proceedings did not eliminate the creditor's right to collect from the debtor.[9] *Braatz*, 610 B.R. at 893. Instead, it stayed the creditor's ability to exercise that right. *Id.* Accordingly, the *Braatz* court concluded that the creditor's alleged misconduct did not violate § 427.104(1)(j). *Id.* Credit Acceptance argues that the automatic bankruptcy stay

---

[8] The bankruptcy court also concluded that the receipt of the garnished wages was not threatening or harassing debt collection conduct in violation of WIS. STAT. § 427.104(1)(h). *Braatz v. Check & Cash LLC*, 610 B.R. 887, 892 (Bankr. E.D. Wis. 2019).

[9] In *Security Finance v. Kirsch*, 2019 WI 42, 386 Wis. 2d 388, 926 N.W.2d 167, the debtor argued that the creditor violated WIS. STAT. § 427.104(1)(j) by filing an action against the debtor to enforce a loan agreement and collect an alleged debt without first providing notice of the right to cure as required by WIS. STAT. §§ 425.104 and 425.105. *Kirsch*, 386 Wis. 2d 388, ¶¶2, 11, 14. Our supreme court rejected this argument, relying on Wisconsin and federal case law to conclude that "a failure to provide a notice of default and right to cure does not destroy a creditor's right to enforce a debt in default." *Id.*, ¶¶20-25.

in ***Braatz*** is analogous to the order issued in this case after the amortization proceedings commenced, and that it did not eliminate Credit Acceptance's right to collect the judgment that the Laceys owed.

¶27    The Laceys argue that ***Braatz*** is "factually inapposite" because the debtor in ***Braatz*** alleged that the debtor's wages were garnished once, two weeks after the automatic stay began, and because the improperly garnished funds were promptly returned to the debtor.  In contrast, the Laceys argue that here, Credit Acceptance's conduct was "more egregious" because Desjurdin's wages were garnished for two periods after the amortization proceedings commenced and because Credit Acceptance did not return the funds that were garnished.  However, the Laceys do not explain why these distinctions matter.  For example, they do not argue that the automatic bankruptcy stay in ***Braatz*** is not analogous to the order here enjoining creditors from debt collection efforts; they do not argue that the ***Bratz*** court misinterpreted ***Kirsch*** or any other Wisconsin law in reaching its conclusion; and they do not otherwise argue that the ***Braatz*** court's conclusion was mistaken.  Here again, in the absence of an argument that adequately refutes the reasoning or relevant conclusion in ***Braatz***, we deem it persuasive.  *See Industrial Risk Insurers*, 318 Wis. 2d 148, ¶25.

¶28    In sum, under the reasoning from ***Whitehead*** and ***Braatz***, which Credit Acceptance relies on and which the Laceys do not adequately refute, we conclude that Credit Acceptance is entitled to judgment on the pleadings as to the

Laceys' claim that Credit Acceptance violated WIS. STAT. § 427.104(1)(j) by "garnish[ing]" Desjurdin's wages.[10]

### III. WISCONSIN STAT. §§ 895.446 and 943.20(1)(b): Civil theft by embezzlement.

¶29 The Laceys allege in their complaint that Credit Acceptance violated WIS. STAT. §§ 895.446 and 943.20(1)(b), which prohibits civil theft by embezzlement. *See* **State v. Swift**, 173 Wis. 2d 870, 880, 496 N.W.2d 713 (Ct. App. 1993) (describing the elements of "embezzlement" under § 943.20(1)(b)). Relevant here, § 895.446 states: "Any person who suffers damage or loss by reason of intentional conduct … that is prohibited under [§] 943.20 … has a cause of action against the person who caused the damage or loss." And § 943.20(1)(b) states that whoever does the following has committed theft:

> By virtue of his or her office, business or employment, or as trustee or bailee, having possession or custody of money … of another, intentionally uses, transfers, conceals, or retains possession of such money … without the owner's consent, contrary to his or her authority, and with intent to convert to his or her own use or to the use of any other person except the owner….

¶30 The Laceys argue that Credit Acceptance is not entitled to judgment on the pleadings as to the Laceys' civil theft claim. However, this argument is undeveloped. The Laceys' argument consists of two paragraphs. One of these paragraphs appears to assert that the Laceys sufficiently pleaded theft under WIS. STAT. § 943.20(1)(a). However, the complaint alleges theft under § 943.20(1)(b), embezzlement, and the Laceys' argument in the circuit court was similarly limited

---

[10] As we note in the next section, it was Desjurdin's employer that actually garnished the wages, not Credit Acceptance.

to paragraph (1)(b); accordingly, the Laceys cannot now argue that they stated a claim for theft under § 943.20(1)(a). *See Schill v. Wisconsin Rapids Sch. Dist.*, 2010 WI 86, ¶45 & n.21, 327 Wis. 2d 572, 786 N.W.2d 177 (explaining that issues not raised in the circuit court are forfeited, and supporting the proposition that appellate courts generally do not address forfeited issues).

¶31 In the other paragraph, the Laceys argue that the complaint alleges that Credit Acceptance "wrongfully retained funds garnished after the [circuit] court had enjoined further collection" and "initiated the garnishment, received the money, and knowingly kept it," which, the Laceys argue, "is sufficient to allege control over the property." But the Laceys do not explain how the complaint alleges each element of a claim under WIS. STAT. § 943.20(1)(b), which, as stated, is the claim alleged in their complaint. For example, the Laceys do not explain how Credit Acceptance's receipt of the garnished funds from the garnishee was "contrary to [Credit Acceptance's] authority."

¶32 Moreover, despite what the Laceys argue, the complaint does not specifically allege that Credit Acceptance ever "received the money[] and knowingly kept it"; instead, the complaint alleges merely that Credit Acceptance "garnished" the funds from Desjurdin's paychecks. However, it is undisputed that it was in fact Desjurdin's employer, the garnishee, that garnished the funds, and it is only in the Laceys' reply brief that they argue that Credit Acceptance's possession of the funds, which is necessary for a claim of theft under WIS. STAT. § 943.20(1), can be reasonably inferred based on WIS. STAT. § 812.39's requirement that garnishees remit garnished funds to the creditor within 10 days. As stated, we generally do not address arguments raised for the first time in a reply brief. *See Techworks*, 318 Wis. 2d 488, ¶28.

15

¶33    Finally, the Laceys do not explain how the complaint sufficiently pleaded that Credit Acceptance intended to convert the funds to Credit Acceptance's own use, or that Credit Acceptance possessed the funds "[b]y virtue of [its] office, business or employment, or as trustee or bailee."  *See* WIS. STAT. § 943.20(1)(b).

¶34    In sum, the Laceys fail to develop an argument as to how the complaint sufficiently pleaded a violation of WIS. STAT. §§ 895.446 and 943.20(1)(b).

## CONCLUSION

¶35    For the reasons stated, we affirm.[11]

*By the Court.*—Order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[11] The Laceys' complaint sought punitive damages, and on appeal the Laceys argue that the complaint's request for punitive damages was sufficient to survive judgment on the pleadings. However, as Credit Acceptance argues, punitive damages are a remedy, not a cause of action. ***Brown v. Maxey***, 124 Wis. 2d 426, 431, 369 N.W.2d 677 (1985) ("[P]unitive damages are in the nature of a remedy and should not be confused with the concept of a cause of action.").  Because we agree that judgment on the pleadings was appropriate, we need not consider the issue of punitive damages.